**E-FILED on** __4/16/07__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD RICHARDSON, Individually and On Behalf All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TVIA, INC., ELI PORAT, DIANE BJORKSTROM, and BENJAMIN SILVA,<br><br>Defendants. | No. C-06-06304 RMW<br><br><br>ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL<br>**[Re Docket Nos. 6, 10]** |
| EDGAR DE SOLA, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TVIA, INC., ELI PORAT, DIANE BJORKSTROM, and BENJAMIN SILVA,<br><br>Defendants. | No. C-06-07307 RMW |

Before the court are motions for consolidation of related cases, appointment of lead plaintiff, and approval of selection of lead counsel. Two plaintiffs, Guy Patrick Pollard-Lowsley ("Pollard-Lowsley") and Mitch Metzman ("Metzman"), separately move for appointment as lead plaintiff. Defendant TVIA, Inc. ("TVIA") agrees that the two class actions are appropriate for consolidation

and offers no position with respect to the motions for appointment of lead plaintiff and approval of lead counsel. For the reasons set forth below, the court appoints Metzman as lead plaintiff and confirms his selection of lead counsel.

## I. BACKGROUND

Plaintiffs Donald Richardson ("Richardson") and Edgar De Sola ("De Sola") filed two related securities fraud class actions against TVIA and its individual officers on behalf of all persons who purchased the TVIA stock from February 7, 2006 to November 16, 2006 ("the Class Period"). TVIA is a fabless semiconductor company, focused on designing and marketing display processors for the digital and interactive TV market. During the Class Period, defendants allegedly issued materially false and misleading financial statements and revenue projections. On three separate dates following the end of a fiscal quarter, TVIA issued favorable press releases reporting its financial results and revenue projections. On February 7, 2006, TVIA issued a press release reporting a revenue of $2,710,000 for the third quarter of fiscal year 2006 ("Q3 2006"), ended December 31, 2005, which was compared to a revenue of $1,090,000 for the same quarter in the previous fiscal year. TVIA subsequently filed its quarterly report with the SEC repeating these numbers. On May 26, 2006, TVIA issued a press release reporting a revenue of $2,760,000 for the fourth quarter of fiscal year 2006 ("Q4 2006"), ended March 31, 2006, which was compared to a revenue of $1,046,000 for the same quarter in the previous fiscal year. TVIA also reported a revenue of $8,333,000 for the fiscal year 2006, which was compared to a revenue of $3,281,000 for the previous fiscal year. TVIA subsequently filed its annual report with the SEC repeating these numbers. On August 7, 2006, TVIA issued a press release reporting a revenue of $5,071,000 for the first quarter of fiscal year 2007 ("Q1 2007"), ended June 30, 2006, which was compared to a revenue of $1,108,000 for the same quarter in the previous fiscal year. On the same day, TVIA held a conference call during which Diane Bjorkstrom, TVIA's then-Chief Financial Officer and Secretary, announced that TVIA expected that the revenues for the second quarter of fiscal year 2007 ("Q2 2007"), ending September 30, 2006, would be higher than that of Q1 2007.

Plaintiffs allege that the truth about TVIA's financial statements and revenue projections began to emerge prior to the end of Q2 2007. On September 28, 2006, TVIA issued a press release

1  announcing that its revenues for Q2 2007 were expected to range from approximately $300,000 to
2  $400,000, compared to the $5,071,000 in revenue reported for Q1 2007. On the same day, following
3  the press release, TVIA's stock fell to $1.44 per share, a single day decline of 58.9%, and closed at
4  that price on extremely high volume. On November 14, 2006, TVIA issued a press release
5  announcing that it was unable to file its quarterly report on Form 10-Q for Q2 2007 because it
6  needed additional time to assess certain accounting practices and revenue recognition matters. The
7  following day, TVIA stock closed trading at $0.88 per share, which was down $0.20 from the
8  previous closing price of $1.08. On November 17, 2006, TVIA issued a press release announcing
9  that it would need to restate historical financial statements for the fiscal year 2006, Q3 2006, and Q1
10 2007 because TVIA's method of revenue recognition upon shipment was not appropriate in light of
11 TVIA's inability to timely collect or enforce payment terms on certain customers in Asia. On
12 November 22, 2006, TVIA filed with the SEC, Form 10-K/A for fiscal year 2006 and Forms 10-Q/A
13 for Q3 2006 and Q1 2007, restating the previously reported financial results. For Q3 2006, TVIA
14 restated revenues from $2,710,000 to $1,935,000 and net loss from $1,730,000 to $2,027,000; for
15 fiscal year 2006, TVIA restated revenues from $7,767,000 to $5,034,000 and net loss from
16 $8,405,000 to $9,580,000; and for Q1 2007, TVIA restated revenues from $5,071,000 to $1,072,000
17 and net loss from $1,286,000 to $2,417,000. On the same day, following TVIA's press release on
18 the restated revenues, TVIA stock closed trading at $0.96. On November 24, 2006, the next trading
19 day, TVIA stock closed at $0.87.

## II. ANALYSIS

### A. Motions to Consolidate

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires the court to address outstanding motions to consolidate before appointing lead plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Under Federal Rule of Civil Procedure 42(a), the court may consolidate "actions involving a common question of law or fact." The two class actions at issue here present common questions of law and fact, predicated as they are on the same announcements and allegations of misstatement by corporate officials that allegedly caused TVIA securities prices to be artificially inflated prior to its drop in share price. No movant contests that there are common questions of fact

among the various complaints. Defendant TVIA also agrees that the two class actions are appropriate for consolidation. Accordingly, the court consolidates the cases as set forth in its order below.

In its motion to consolidate, the Pollard-Lowsley moved for preservation of discovery. The motion included requests to order preservation under the PSLRA. The PSLRA requires defendants to preserve documents related to the case:

> [A]ny party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data) and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3(C)(i). As the parties are presently subject to this provision by virtue of having notice of this action, the court has no issue with requiring compliance with this section in its order.

**B.    Motions to Appoint Lead Plaintiff**

The PSLRA sets forth the process for determining the lead plaintiff in a securities class action brought under the Securities and Exchange Act of 1935 ("Exchange Act"). 15 U.S.C. § 78u-4(a)(3)(B); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Under the PSLRA, the court shall appoint as lead plaintiff the member or members of the class "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "The 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 729.

Determining the lead plaintiff is a three-step process: (1) the first plaintiff to file publicizes the pendency of the action, the claims made, and the purported class period and announces that any member of the class may move for appointment for lead plaintiff within 60 days; (2) the court selects the plaintiff who has the "largest financial interest in the relief sought by the class" and who meets the Rule 23 requirements as the presumptive lead plaintiff; and (3) the court allows other plaintiffs the opportunity to rebut the presumptive lead plaintiff's showing that it satisfies the Rule 23 typicality and adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(A), (B)(iii)(I)-(II); *Cavanaugh*, 306

F.3d at 729-30. As set forth below, Metzman[1] both meets the requirements as the presumptive lead plaintiff and survives challenges against its financial stake and appropriateness under Rule 23.

### 1. Notification

In a securities class action governed by the PSLRA, the first plaintiff to file must within 20 days post a qualifying notice "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i). Class members wishing to be appointed lead plaintiff must move for appointment within 60 days of that publication. *Id.* § 78u-4(a)(3)(A)(i)(II). Each prospective lead plaintiff must provide a sworn certification representing *inter alia* that he or she has read the complaint, did not purchase the security at the direction of counsel or in order to participate in any private action, and is willing to serve as a representative party. *Id.* § 78u-4(a)(2)(A)(i)-(iii). This certification must set forth "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." *Id.* § 78u-4(a)(2)(A)(iv).

On the date he filed his complaint, October 6, 2006, plaintiff Richardson published the required notice on *Yahoo! Finance*, thereby satisfying the notification requirement. Each of the movants in this case has brought a motion to be appointed lead plaintiff within the appropriate time and has included the requisite certification.[2]

---

[1] The court acknowledges that this order appoints a different lead plaintiff than the court indicated in its tentative ruling, prior to the hearing on the present motions. Based on further review following the oral arguments, the court is convinced for the reasons set forth herein that Metzman is the plaintiff most capable of adequately representing the interests of the class members.

[2] Metzman alleges that Pollard-Lowsley has failed to file a certification conforming to Civil Local Rule 3-7(c), which provides that:

> Any party seeking to serve as lead plaintiff, but who does not also file a complaint, need not file the certification required in Civil L.R. 3-7(b), but must at the time of initial appearance state that the party has reviewed a complaint filed in the action either:
> (1) Adopts its allegations or, if not,
> (2) Specifies the allegations the party intends to assert.

Civil L.R. 3-7(c). The record, however, indicates that Pollard-Lowsley has complied with Civil L.R. 3-7(c) by stating that he has reviewed the complaint and specifying the allegations he intends to assert in his motion and supporting declarations.

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL—C-06-06304 RMW
JEK 5

### 2.     **Largest Financial Interest**

To determine which movant has the largest financial interest, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit" through "accounting methods that are both rationally and consistently applied." *Cavanaugh*, 306 F.3d at 730. Courts have typically considered the "Olsten-Lax" factors to determine who has the largest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11, 1997)).

Examining the first Olsten-Lax factor in this case, it is apparent that Metzman purchased the greater number of TVIA shares during the Class Period than Pollard-Lowsley. Metzman purchased 99,800 shares, while Pollard-Lowsley purchased 30,000 shares. The second and third Olsten-Lax factors, however, weigh against Metzman because he sold 247,600 shares, which constitute all of the 99,800 shares he acquired during the Class Period and 147,800[3] of the shares he had acquired prior to the Class Period. Pollard-Lowsley, on the other hand, held the 30,000 shares purchased during the Class Period and expended net funds totaling $97,685.43. Referring to these figures, Pollard-Lowsley argues that Metzman is a "net seller," who sold more shares than purchased during the Class Period, and therefore, he is subject to a unique defense that renders him an inadequate lead plaintiff. Although courts have generally rejected a net seller's motion for appointment as lead plaintiff, *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999), it is important to note that the courts' disapproval was directed toward net sellers who profited from the purchase and sale of defendant's shares during the class period. *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003) (rejecting as lead plaintiff a movant who made gains during the class period by citing *Comdisco* and *McKesson*). In cases involving net sellers who are also net losers, on

---

[3] Metzman sold majority of his previously-acquired shares during the Class Period, leaving him with 8,162 shares at the end of the Class Period.

1  the other hand, courts have held that a movant "should have no trouble proving damages and,
2  therefore, is qualified to serve as lead plaintiff." *Frank v. Dana Corp.,* 237 F.R.D. 171, 172-73
3  (N.D. Ohio 2006); *see also In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio
4  2005) ("courts usually reject these so-called net gainers as lead plaintiffs, opting instead for net
5  losers that will have less trouble proving damages"). Therefore, the court must weigh the
6  approximate losses suffered to determine the plaintiff with the largest financial loss.

7  Of the Olsten-Lax factors, courts consider the fourth factor, the approximate losses suffered,
8  as most determinative in identifying the plaintiff with the largest financial loss. *In re Vicuron*
9  *Pharma., Inc. Sec. Litig.*, 225 F.R.D. 508, 510-11 (E.D. Pa. 2004); *Takara Trust v. Molex, Inc.*, 229
10 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has
11 suffered the greatest total losses"). In calculating the approximate losses suffered, courts have used
12 the "last in, first out" (LIFO) method in which plaintiff's sales of the shares during the class period
13 are matched first against the plaintiff's most recent purchase of the shares, and gains or losses from
14 those transactions are considered. *Johnson v. Dana Corp.,* 236 F.R.D. 349, 351-52 (N.D. Ohio
15 2006); *In re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 100-01 (S.D.N.Y. 2005). Under the LIFO
16 method, Metzman claims losses of $119,435.53. Pollard-Lowsley claims losses of $69,649.07. As
17 discussed above, unlike *Cable & Wireless, Comdisco*, and *McKesson* in which the net sellers
18 profited from the net sales, this case presents a situation in which the net seller has a greater
19 financial loss than the net purchaser. Thus, Metzman, who suffered the greater financial loss, is
20 qualified to serve as the lead plaintiff. The weight of the Olsten-Lax factors, therefore, favors
21 Metzman as the lead plaintiff with the largest financial loss.

22 **3.    Rule 23 Requirements**

23 Upon determining the movant with the largest financial interest, the court "must then focus
24 its attention on that plaintiff and determine . . . whether he satisfies the requirements of Rule 23(a)."
25 *Cavanaugh*, 306 F.3d at 730. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) requires satisfaction
26 of four factors to serve as a class representative:

27 > (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the
28

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL—C-06-06304 RMW
JEK                                                  7

representative parties are typical of the claims or defenses of the class;  and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The typicality and adequacy requirements of Rule 23 are the main focus of this determination.  *See Cavanaugh*, 306 F.3d at 730.  Examination of the remaining requirements is deferred until the lead plaintiff moves for class certification.

### a.     **Initial Rule 23 Determination**

The plaintiff with the largest financial stake in the controversy that preliminarily satisfies the typicality and adequacy requirements is presumed to be the most adequate plaintiff.  *Cavanaugh*, 306 F.3d at 730.  The adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation.  Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

As determined above, Metzman is the plaintiff with the largest financial stake in the controversy.  Metzman presumably meets the adequacy requirement because there is no evidence that Metzman is antagonistic to the class members and he has selected counsel that has significant experience in securities and class action cases.  Also, Metzman shares substantially similar questions of law and fact with the members of the class because the claims arise from the same alleged course of conduct by defendants.  His claims are presumptively typical of the members of the class.  Thus, Metzman is the presumptive lead plaintiff.

### b.     **Rebutting the Presumptive Lead Plaintiff's Showing**

In the third step of the lead plaintiff determination process, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Cavanaugh*, 306 F.3d. at 730.  The presumption of adequacy "may be rebutted only upon proof . . . that the presumptively

most adequate plaintiff" does not satisfy the adequacy or typicality requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Cavanaugh*, 306 F.3d at 729 n.2. If the presumptive lead plaintiff does not meet the typicality or adequacy requirement, the court determines whether the plaintiff with the next highest stake in the litigation has made a prima facie showing of typicality and adequacy. *Cavanaugh*, 306 F.3d at 731. "If so, it must declare that plaintiff the presumptive lead plaintiff and repeat step three of the process by giving other plaintiffs an opportunity to rebut that showing. This process must be repeated sequentially until all challenges have been exhausted." *Id.*

Pollard-Lowsley argues that Metzman faces a unique challenge to demonstrate loss causation because he sold all 99,800[4] of the shares he had purchased during the Class Period on September 28, 2006, prior to TVIA disclosing its need for financial restatement on November 17, 2006. Pollard-Lowsley contends that this renders Metzman an atypical plaintiff subject to a unique defense because defendants will inevitably argue that the September 28, 2006 press release was not a corrective disclosure. Pollard-Lowsley bases this assertion on *Dura Pharma., Inc., v. Broudo*, 544 U.S. 336 (2005), in which the Supreme Court dismissed a securities fraud claim because the plaintiff was unable to prove specific loss was proximately caused by a defendant's misrepresentations. *Dura* at 346. In *Dura*, the Court reasoned that the plaintiffs only alleged that they had paid an artificially high price and failed to prove that the share price fell after the truth became known. The Court expressly limited its holding, however, to finding that a plaintiff cannot show loss causation merely by alleging an inflated purchase price. *Id.* at 346 ("[w]e need not, and do not, consider other proximate cause or loss-related questions"). Accordingly, the Ninth Circuit has interpreted *Dura* narrowly and held that a plaintiff can establish loss causation by demonstrating a causal connection between the deceptive acts that form the basis of the securities fraud claim and the injury suffered by the plaintiff. *In re Daou Sys. Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005). Other courts have similarly held that a corrective disclosure is not necessary where the subject of the misrepresentation and omissions caused the loss. *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 307 (S.D.N.Y. 2005)*; See e.g., Parker Freeland v. Iridium World Comm., Ltd., et al.*, 233 F.R.D. 40, 47 (D.D.C. 2006) (finding

---

[4] Although Metzman held 8,162 shares at the end of the Class Period, under the LIFO method he has sold all 99,800 shares that he acquired during the Class Period.

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL—C-06-06304 RMW
JEK 9

1  that "reading *Dura* to require proof of a complete, corrective disclosure [resulting in a large price
2  decline] would allow wrongdoers to immunize themselves with a protracted series of partial
3  disclosures"); *See also In re Cardinal Health Inc. Sec. Litig.*, 426 F.Supp.2d 688, 760 (S.D. Ohio
4  2006).

5        Although TVIA's September 28, 2006 press release announcing the dramatically lower
6  revenue projections for Q2 2007 may not constitute an explicit corrective disclosure exposing the
7  alleged fraud, Metzman may nevertheless be able to establish loss causation by demonstrating a
8  causal connection between the alleged deceptive acts and the injury suffered.  Furthermore, the
9  September 28, 2006 press release was immediately followed by the single greatest drop in share
10 price, along with the highest trading volume, during the Class Period.  In fact, the majority of
11 approximate losses suffered by both movants resulted directly from this event.  It is not unlikely that
12 other class members, as well as both movants, will seek to recover for this loss, and it is also not
13 unlikely that defendants will raise the same loss causation defense against the entire class.  The court
14 therefore cannot conclude that the potential vulnerability to a loss causation defense is unique to
15 Metzman's case.  Pollard-Lowsley has not adequately rebutted Metzman's showing that he satisfies
16 the typicality and adequacy requirements.

17       Thus, for the foregoing reasons, the court grants Metzman's motion for appointment as lead
18 plaintiff.

19       **C.**     **Approval of Class Counsel**

20       Once the most adequate plaintiffs are selected, the "most adequate plaintiff[s] shall, subject
21 to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §
22 78u-4(a)(3)(B)(v).  Accordingly, Metzman seeks approval of its selection of the Rosen Law Firm,
23 P.A. to serve as lead counsel, and Glancy, Binkow & Goldberg, L.L.P. as liaison counsel.  The court
24 has reviewed the resumes for these firms and is satisfied that Metzman has selected highly qualified,
25 experienced counsel who will adequately represent the interests of the class.  The court will permit
26 the selection of two firms, but cautions that this must not result in the duplication of any expenses to
27 the class.
28

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD
COUNSEL—C-06-06304 RMW
JEK                                            10

# III. ORDER

**A.  Motion to Consolidate Related Cases**

1.  The following actions pending in the Northern District are, until further order of this court, consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure before the Honorable Ronald M. Whyte: *Richardson v. TVIA, Inc., et al.*, C-06-06304 (RMW) and *De Sola v. TVIA, Inc., et al.*, C-06-07307 (RMW).

2.  These actions shall be referred to herein as the "Consolidated Actions."  This Order shall apply to the Consolidated Actions and to each case that is subsequently filed in this court or transferred to this court that relates to the same subject matter as in the Consolidated Actions:

    a.  The short caption of the Consolidated Actions shall be "In re TVIA, Inc., Sec. Litig."  Any other action now pending or hereafter filed in this District as a class action on behalf of acquirers of TVIA securities between February 7, 2006 through November 16, 2006, inclusive, which arises out of the same facts as alleged in the Consolidated Actions, shall be consolidated for all purposes as soon as it is brought to the court's attention.

    b.  All related actions that are subsequently filed in, or transferred to, this District shall be consolidated into this action for pretrial purposes. This Order shall apply to every such related action, absent order of the Court.  A party that objects to such consolidation, or to any other provision of this Order, must file an application for relief from this Order within thirty (30) days after the date on which a copy of the Order is mailed to the party's counsel.

    c.  This Order is entered without prejudice to the rights of any party to apply for severance of any claim or action, for good cause shown.

    d.  The docket in Civil Action No. C-06-06304 (RMW) shall constitute the Master Docket for this action.

e.  Every pleading filed in the consolidated action shall bear the following caption:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL—C-06-06304 RMW
JEK                                                                11

|   |   |
|---|---|
| In re TVIA, INC, SECURITIES LITIGATION | No. C-06-06304 RMW And Related Cases |
|  | <u>CLASS ACTION</u> |

This Document Relates to:

   f.  A Master Docket and a Master File are hereby established for the Consolidated Actions under Master File No. C-06-06304 (RMW). When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable only to some, but not all, of such actions, the court's docket number for each individual action to which the paper is intended to be applicable and the last name of the plaintiff in such action shall appear immediately after the words "This Document Relates To:", the docket number for each individual action to which the document applies, along with the last name of the first-listed plaintiff in said action (e.g., "No. C-06-06304 (RMW) (Richardson))."

   g.  When a pleading is filed and the caption shows that it is to be applicable to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket. No further copies need be filed or docket entries made. When a pleading is filed and the caption shows that it is to be applicable to fewer than all of the Consolidated Actions, the Clerk need file such pleading only in the Master File but, nonetheless, shall note such filing in both the Master Docket and in the docket of each such action.

   h.  When a case that relates to the subject matter of the Consolidated Actions is hereafter filed in this court or transferred here from another court, the Clerk of the court shall:

     1.  place a copy of this Order in the separate file for such action;

     2.  mail a copy of the Order of assignment to counsel for plaintiffs and to counsel for defendants in the Consolidated Actions;

     3.  mail to the attorneys for the plaintiff(s) and to any new defendant(s) in the newly filed or transferred action a copy of this Order; and

     4.  make an appropriate entry in the Master Docket.

i. The court requests the assistance of counsel in calling to the attention of the Clerk of this court the filing or transfer of any case that might properly be consolidated as a part of In re Netopia, Inc. Securities Litigation.

j. This Order shall apply to each case subsequently filed in this court or transferred to this court, unless a party objecting to the consolidation of such case or to any other provision of this Order files, within ten (10) days after the date upon which a copy of this Order is mailed to counsel for such party, an application for relief from this Order or any provision herein and this court deems it appropriate to grant such application.

**B.     Motion to Appoint Lead Plaintiffs and Approval of Co-Lead Counsel**

1. Metzman is appointed as lead plaintiff for the putative class and any subsequently consolidated or related action to represent the interests of the putative class.

2. Lead plaintiff's selection of counsel for the putative class is hereby approved. The Rosen Law Firm, P.A. is appointed to serve as lead counsel, and Glancy, Binkow & Goldberg, L.L.P. is appointed liaison counsel pursuant to § 21D(a)(3)(B)(v) of the Exchange Act (hereinafter "lead counsel").

3. Co-lead counsel shall have authority to speak for all plaintiffs and putative class members in all matters regarding the litigation including, but not limited to, pretrial proceedings, motion practice, trial, and settlement, and shall make all work assignments in such a manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort. Additionally, co-lead counsel shall have the following responsibilities:

a. to brief and argue motions and file opposing briefs in proceedings initiated by other parties;

b. to initiate and conduct discovery proceedings, including, but not limited to, the preparation of discovery materials and discussions or negotiations concerning discovery issues;

c. to direct and coordinate the examination of witnesses in depositions and on oral interrogatories;

d. to act as spokespersons at court conferences and hearings;

      e.     to delegate responsibilities for specific tasks to other counsel in a manner to assure that pretrial preparation for the plaintiffs is conducted effectively, efficiently, and economically;

      f.     to consult with and call meetings of plaintiffs' counsel when they deem it appropriate;

      g.     to consult with and employ experts;

      h.     to negotiate with and enter into agreements with defendants' counsel with respect to settlement and other matters;

      i.     to coordinate this action with any related state or Federal court proceeding that involves issues similar to those raised in this consolidated action in order to avoid unnecessary duplication, expense, and effort;

      j.     to conduct all pretrial, trial, and post-trial proceedings; and

      k.     to perform such other duties as they deem necessary, or as may be expressly authorized by further order of the court.

3.     Co-lead counsel shall be responsible for coordinating all activities and appearances on behalf of the putative class and for disseminating notices and orders of this court.

4.     No motion, application or request for discovery shall be served or filed, or other pretrial proceedings initiated, on behalf of lead plaintiff, except through co-lead counsel.

5.     All notices, proposed orders, pleadings, motions, discovery, and memoranda shall be served upon co-lead counsel by overnight mail service, telecopy, or hand delivery.

6.     Co-lead counsel for the putative class shall be available and responsible for communications to and from the court. Co-lead counsel shall be responsible for the creation and maintenance of a master service list of all parties and their respective counsel.

7.     Defendants' counsel may rely upon all agreements made with co-lead counsel.

8.     During the pendency of this litigation, or until further order of this court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information and materials such as computerized data and

1  electronic mail, containing information that is relevant to or which may lead to the discovery of
2  information relevant to the subject matter of the pending litigation.

3       9.    This Order shall apply to each case subsequently filed in this court or transferred to
4  this court, unless a party objecting to the consolidation of such case or to any other provision of this
5  Order files within ten (10) days after the date upon which a copy of this Order is mailed to counsel
6  for such party, an application for relief from this Order or any provision herein and this court deems
7  it appropriate to grant such application.

8      **C.**    **Pleadings and Motions**

9       1.    Defendants are not required to respond to the complaint in any action consolidated
10 into this action, other than the consolidated complaint or a complaint designated as the operative
11 complaint.

12      2.    Lead plaintiff shall file a consolidated complaint within thirty (30) days after filing
13 the order designating the lead plaintiff unless otherwise agreed upon by the parties.  The
14 consolidated complaint shall be the operative complaint and shall supersede all complaints filed in
15 any of the actions consolidated herein.

16      3.    Defendants shall respond to the consolidated complaint within thirty (30) days
17 after service, unless otherwise agreed upon by the parties.  If defendants file any motions
18 directed at the consolidated complaint, the opposition briefs shall be filed within forty-five (45) days
19 of the motion and reply briefs shall be filed within thirty (30) days of the response unless otherwise
20 agreed upon by the parties.

21      4.    The parties shall serve all papers on each other by hand, by overnight delivery, or (by
22 prior agreement) by facsimile, unless otherwise agreed upon by the parties.  Notwithstanding the
23 foregoing, defendants may serve plaintiffs' counsel, other than lead plaintiffs' counsel, by first-class
24 mail, unless otherwise agreed upon by the parties.

25      5.    Plaintiffs shall file a motion for class certification within thirty (30) days after
26 service of the consolidated complaint. Counsel shall propose to the court a mutually agreeable
27 schedule for class certification discovery and for briefing and hearing of such motion.

28

**United States District Court**
For the Northern District of California

**D.     Discovery**

1.     The following definitions shall presumptively apply in all discovery issued in this action:

    a.     Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

    b.     Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

    c.     Identify (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

    d.     Identify (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

    e.     Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

    f.     Person. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

    g.     Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

    h.     The following rules of construction apply to all discovery requests:

        i.     All/each. The terms "all" and "each" shall be construed as all and each.

      ii.  And/or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

      i.  Number. The use of the singular form of any word includes the plural and vice versa.

  2.  All parties will comply with 15 U.S.C. § 78u-4(b)(3)(C)(i).

DATED:  4/16/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL—C-06-06304 RMW
JEK  17

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Solomon B. Cera | scera@gbcslaw.com |
| Gwendolyn R. Giblin | ggiblin@gbcslaw.com |
| Laurence M. Rosen | lrosen@rosenlegal.com |
| Phillip P. Kim | pkim@rosenlegal.com |
| Lionel Z. Glancy | info@glancylaw.com |

**Counsel for Defendants:**

| | |
|---|---|
| Walter J. Robinson | wrobinson@pillsburylaw.com |
| Bruce A. Ericson | bruce.ericson@pillsburylaw.com |
| Andrew D. Lanphere | alanphere@pillsburywinthrop.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 4/16/07          /s/ MAG
          **Chambers of Judge Whyte**

ORDER CONSOLIDATING RELATED CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL—C-06-06304 RMW
JEK                                    18